

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

December 29, 1966

Honorable Preston Smith
Lieutenant Governor
State of Texas
Austin, Texas

Opinion No. C-793

Re: Eligibility of FHA
insured first lien
mortgages as invest-
ments for the Per-
manent University
Fund of the University
of Texas, and the author
ity of the Board of Re-
gents of the University
of Texas, the State
Board of Education, the
State Board of Trustees
of the Employees Re-
tirement System and the
State Board of Trustees
of the Teacher Retire-
ment System to contract
for the servicing of
FHA insured first lien
mortgage investments.

Dear Governor Smith:

You have requested reconsideration of Attorney General's
Opinion No. WW-484 (August 5, 1958), hereinafter referred to
as WW-484. In that opinion, the Attorney General said the
Permanent University Fund could not enter into contracts for
servicing mortgages insured by the Federal Housing Administra-
tion (FHA) because:

"The first lien real estate mortgage
securities inquired about are not guaranteed
in whole as required by Section 11a of Article
VII of the Constitution of Texas and are not
eligible as an investment of the Permanent
University Fund of the University of Texas."

-3804-

Your request points to changes in the statutes and regulations pertaining to FHA insured mortgages since WW-484 was rendered and closes with two questions that will be answered in order.

"(1)  ARE FHA INSURED FIRST LIEN REAL ESTATE MORTGAGES NOW ELIGIBLE AS AN INVESTMENT FOR THE PERMANENT UNIVERSITY FUND OF THE UNIVERSITY OF TEXAS?"

WW-484 was limited to those mortgages insured by the FHA under Section 203 of the National Housing Act (12 U.S.C. Sec. 1709), as amended, hereinafter referred to as the Act; this opinion is also so limited.  The basic question recited in WW-484 was whether or not such mortgages were "guaranteed . . . in whole" as required by Section 11a of Article VII of the Constitution of Texas, the pertinent part of which provides that:

> "/T 7he Permanent University Fund may be invested in first lien real estate mortgage securities guaranteed in any manner in whole by the United States Government or any agency thereof . . . . In making each and all of such investments said Board of Regents shall exercise the judgment and care under the circumstances then prevailing which men of ordinary prudence, discretion and intelligence exercise in the management of their own affairs not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income therefrom as well as the probable safety of their capital . . . . This amendment shall be self-enacting . . . ."

After consideration of the statutes and regulations in effect on August 5, 1958, the Attorney General concluded in WW-484 that the FHA insurance was not sufficient to render the mortgages "guaranteed . . . in whole" for the benefit of the Permanent University Fund.

The Attorney General has always recognized the general effect of Section 11a, Article VII of the Constitution of Texas.  In Attorney General's Opinion No. MS-263 (December 31, 1956), it was stated:

> "A consideration of the provisions of
> Article 7, Sections 10, 11, 11(a), 12 and
> 15 of the Constitution of Texas, shows quite
> clearly that the only change in our Consti-
> tution affected by the adoption of Article
> 7, Section 11(a) was to increase the permis-
> sive investments of the Permanent University
> Fund. The sole purpose of the endowment or
> non-expendable fund is to produce revenue to
> maintain the institution endowed, and the
> new provision of the Constitution is merely
> to aid in the procurement of that objective
> by the broadening of the investment port-
> folio."

This statement was reiterated in Attorney General's Opinion
No. WW-69 (March 18, 1957).

After careful consideration of amendments to the Act
and the regulations promulgated thereunder, this office
consents to reconsider the conclusion in WW-484 that FHA
insured first lien mortgages are not eligible investments
for the Permanent University Fund. The Act has been changed
many times; therefore, for convenience all citations will be
to the provisions of the Act as found in Title 12, U.S.C.,
Sections 1701 et. seq.

In WW-484, portions of Section 204 of the Act (12 U.S.C.
Sec. 1710) were quoted in order to outline the procedure re-
quired when a mortgage has been foreclosed. Those portions
will again be quoted with the relevant changes thereto em-
phasized:

> "(a) In any case in which the mortgagee
> under a mortgage insured under section 1709
> of this title /Section 203 of the Act 7shall have
> foreclosed and taken possession of the mortgaged
> property in accordance with regulations of,
> and within a period to be determined by, the
> Commissioner or shall, with the consent of the
> Commissioner, have otherwise acquired such
> property from the mortgagor after default, the
> mortgagee shall be entitled to receive the
> benefit of the insurance as hereinafter pro-
> vided, upon (1) the prompt conveyance to the
> Commissioner of title to the property which

meets the requirements of rules and regulations
of the Commissioner in force at the time the
mortgage was insured, and which is evidenced
in the manner prescribed by such rules and
regulations, and (2) the assignment to him of
all claims of the mortgagee against the mort-
gagor or others, arising out of the mortgage
transaction or foreclosure proceedings, except
such claims as may have been released with
the consent of the Commissioner. Upon such
conveyance and assignment . . . the Commissioner
shall, subject to the cash adjustment herein-
after provided, issue to the mortgagee deben-
tures having a total face value equal to the
value of the mortgage and (subject to sub-
section (e) (2) of this section) a certifi-
cate of claim, as hereinafter provided. For
the purposes of this subsection, the value of
the mortgage shall be determined, in accord-
ance with rules and regulations prescribed
by the Commissioner, by adding to the amount
of the original principal obligation of the
mortgage which was unpaid on the date of the
institution of foreclosure proceedings, or on
the date of the acquisition of the property
after default other than by foreclosure the
amount of all payments which have been made
by the mortgagee for taxes, ground rents, and
water rates, which are liens prior to the mort-
gage, special assessments which are noted on
the application for insurance or which become
liens after the insurance of the mortgage,
charges for the administration, operation,
maintenance and repair of community-owned
property or the maintenance and repair of
the mortgaged property, the obligation for
which arises out of a covenant filed for
record and approved by the Commissioner prior
to the insurance of the mortgage, insurance
on the mortgaged property, and any mortgage
insurance premiums, and any tax imposed by
the United States upon any deed or other
instrument by which said property was acquired
by the mortgagee and transferred or conveyed
to the Commissioner and by deducting from
such total amount any amount received on

account of the mortgage after either of such dates, and any amount received as rent or other income from the property, less reasonable expenses incurred in handling the property, after either of such dates . . . . And provided further, That with respect to mortgages which are accepted for insurance under Section 203(b) (2) (D) or under the second proviso of section 1713 (c) (2) of this title, or under section 1715e of this title, or with respect to any mortgage accepted for insurance under section 1709 of this title on or after August 2, 1954, there may be included in the debentures issued by the Commissioner on account of the cost of foreclosure (or of acquiring the property by other means) actually paid by the mortgagee and approved by the Commissioner an amount, not in excess of two-thirds of such cost or $75 whichever is the greater: <u>And provided further, That with respect to a mortgage accepted for insurance pursuant to a commitment issued on or after September 2, 1964, the Commissioner may include in debentures or in the cash payment an amount not to exceed the foreclosure, acquisition, and conveyance costs actually paid by the mortgagee and approved by the Commissioner . . . And provided further, That where the claim is paid in cash there shall be included in the cash payment an amount equivalent to the compensation for loss of debenture interest that would be included in computing debentures if such claim were being paid in debentures . . . .</u> " 12 U.S.C., Section 1710(a) (Emphasis added).

In 1958, a mortgagee who foreclosed and took possession of the mortgaged property upon the mortgagor's default had the right to receive payment of FHA insurance in the combination of (1) FHA debentures, (2) cash up to $50 and (3) a certificate of claim. As demonstrated by the changes in the Act and discussed in greater detail, infra, the form of payment of FHA insurance has changed considerably.

In WW-484, Section 204(e) of the Act (12 U.S.C. Sec. 1710(e)), which defines a certificate of claim, was used as evidence that the total face value of the debentures

plus the cash adjustment could possibly be insufficient to make a mortgagee (the Permanent University Fund) whole when a mortgage was foreclosed. That provision now reads:

"(e) (1) Subject to paragraph (2), the certificate of claim issued by the Commissioner to any mortgagee shall be for an amount which the Commissioner determines to be sufficient, when added to the face value of the debentures issued and the cash adjustment paid to the mortgagee, to equal the amount which the mortgagee would have received if, at the time of the conveyance to the Commissioner of the property covered by the mortgage, the mortgagor had redeemed the property and paid in full all obligations under the mortgage and a reasonable amount for necessary expenses incurred by the mortgagee in connection with the foreclosure proceedings, or the acquisition of the mortgaged property otherwise, and the conveyance thereof to the Commissioner. Each such certificate of claim shall provide that there shall accrue to the holder of such certificate with respect to the face amount of such certificate, an increment at the rate of 3 per centum per annum which shall not be compounded. The amount to which the holder of any such certificate shall be entitled shall be determined as provided in subsection (f) of this section.

(2) A certificate of claim shall not be issued and the provisions of paragraph (1) of this subsection shall not be applicable in the case of a mortgage accepted for insurance pursuant to a commitment issued on or after September 2, 1964." (Emphasis added).

Further, the FHA regulations provide:

"If the mortgage was accepted for insurance pursuant to a commitment issued on or after September 2, 1964, no certificate of claim shall be issued." 24 C.F.R., Section 203.415(b). See also letter from FHA Commissioner to all approved mortgagees dated September 2, 1964 (64-10).

In WW-484 the protection afforded the Permanent University Fund by the FHA in the event of default by the mortgagor and foreclosure by the mortgagee was examined. Today, the payment of insurance benefits is somewhat different. First, the Act provides:

"Notwithstanding any other provisions of this chapter with respect to the payment of insurance benefits, the Commissioner is authorized, in his discretion, to pay in cash or in debentures any insurance claim or part thereof which is paid on or after August 10, 1965, on a mortgage or a loan which was insured under any section of this chapter either before or after such date. If payment is made in cash, it shall be in an amount equivalent to the face amount of the debentures that would otherwise be issued plus an amount equivalent to the interest which the debentures would have earned, computed to a date to be established pursuant to regulations issued by the Commissioner." 12 U.S.C., Section 1735d(a).

Further, the regulations provide:

"If the application for insurance benefits is acceptable to the Commissioner, payment of the insurance claim will be made in cash, in debentures or in a combination of both, as determined by the Commissioner at the time of the payment." 24 C.F.R., Section 203.400.

The present policy of the FHA is found in a letter from the Commissioner to all approved mortgagees dated August 10, 1965 (65-9) that says on pages 5 - 6:

"FHA is now authorized to settle all mortgage insurance claims in cash or debentures at the option of FHA. All claims received on and after September 1, 1965, will be paid in cash, unless the mortgagee specifically requests debentures when the claim is filed. A 90% partial settlement will be made within 5 days after the claim is received. The

> final settlement will be made after receipt
> of fiscal data and title requirements. The
> partial and final settlement will include an
> interest allowance, comparable to the deben-
> ture rate, on the amount of the settlement.
> No cash remittances are to be made to FHA
> covering escrow deposits, undisbursed mort-
> gage proceeds, etc. These amounts will be
> retained by the mortgagee and offset in the
> claim settlement."

The formula for determining the amount of payment the FHA
will make is found in 24 C.F.R., Sections 203.401-203.404.

Should the mortgagee elect to accept debentures, the
debentures are ". . . fully and unconditionally guaranteed
as to principal and interest by the United States . . . ."
12 U.S.C., Section 1710(d). (Emphasis added). The interest
rate on debentures is established by the method set out in
12 U.S.C., Section 17150 and the regulations provide that:

> "Debentures shall bear interest from
> the date of issue, payable semiannually on
> the first day of January and the first day
> of July of each year at the rate in effect
> as of the date the commitment was issued,
> or as of the date the mortgage was endorsed
> for insurance, which ever rate is the higher
> . . ./on or after July 1, 1966, the effective
> rate is 4 5/8%_7." 24 C.F.R., Section 203.405.

Debentures mature twenty years from the date of issuance.
24 C.F.R., Section 203.406.

The mortgagee now has the option of (1) obtaining
a cash payment of benefits, or (2) requesting debentures
that are guaranteed by the United States. Even if the FHA
Commissioner's policy should change the mortgagee would be
paid in a combination of cash and debentures; the certifi-
cates of claim have been abolished by Congress. FHA in-
sured first lien mortgages, therefore, meet the constitutional
standard and are now eligible investments for the Permanent
University Fund. The mortgagee's option is to be exercised,
of course, by the Board of Regents under the prudent investor
standard set out in Section 11a, Article VII of the Constitu-

tion of Texas. The answer to your first question is, therefore, affirmative.

"(2) DO THE UNIVERSITY OF TEXAS, THE FREE PUBLIC SCHOOL FUND, THE STATE EMPLOYEES' RETIREMENT SYSTEM, AND THE TEACHERS' RETIREMENT SYSTEM HAVE THE AUTHORITY TO CONTRACT WITH CORRESPONDENTS IN VARIOUS SECTIONS OF TEXAS FOR THE SERVICING OF FHA FIRST LIEN MORTGAGE LOANS IN ACCORDANCE WITH THE ATTACHED 'MODEL SALES AND SERVICING AGREEMENT' WHICH WAS DRAFTED BY THE MORTGAGE BANKERS ASSOCIATION OF AMERICA?"

We have held, supra, that the Permanent University Fund is authorized to invest in FHA insured first lien mortgages. The following Funds can also be invested in FHA insured first lien mortgages:

(1) Permanent School Fund. Article VII, Section 4 of the Constitution of Texas and Article 2669(d), V.C.S.

(2) State Retirement, Disability and Death Compensation Fund. Article XVI, Section 62(a) of the Constitution of Texas and Article 6228a, Section 7A, V.C.S.

(3) State Teacher Retirement Fund. Article III, Sections 48a and 48b of the Constitution of Texas and Article 2922-1, Section 13(1), V.C.S.

The authority of the Board of Regents of the University of Texas, the State Board of Education, the State Board of Trustees of the Employees Retirement System and the State Board of Trustees of the Teacher Retirement System of Texas (the agencies charged with administration and control of each Fund) to contract for servicing of mortgages is not expressly provided by statute. There is, however, no statutory prohibition.

In Attorney General's Opinion No. WW-69, supra, it was said with reference to a proposed procedure for the purchase and sale of corporate securities for the Permanent University Fund:

> "Article VII, Section 11(a), by its own
> terms, is self-enacting and the absolutely
> essential powers to carry the program into
> effect are necessarily conferred upon the
> Board of Regents by implication. The pay-
> ment of such required commissions, fees and
> taxes, before the delivery of the securities
> to the Permanent University Fund at the State
> Treasury, are costs of acquiring the securities
> and must be paid from the Permanent University
> Fund. This is the ordinary and customary busi-
> ness and accounting practice and the constitu-
> tional provision infers that the customary busi-
> ness procedures will be followed." (Emphasis
> added). See First National Bank v. Port Arthur,
> 35 S.W.2d 258 (Tex. Civ. App. 1931, n.w.h.).

Since it is the customary business and accounting practice
for institutional mortgage investors to contract with
mortgage bankers for servicing of their investments, we
find that the above named agencies may so contract.

Each Fund has been created pursuant to separate con-
stitutional and statutory provisions. Each Fund has a
separate set of statutes relating to its accounting aspects.
Each controlling agency has a certain degree of discretion
as to the investment of each Fund. See Attorney General's
Opinion No. C-704 (June 7, 1966). Therefore, this office
does not deem it appropriate to approve any single contract
form for use by all agencies. We recommend that future ser-
vicing contracts be submitted to this office for approval
prior to execution.

In answer to your second question, it is our opinion
that the Board of Regents of the University of Texas, the
State Board of Education, the State Board of Trustees of
the Employees Retirement System and the State Board of
Trustees of the Teacher Retirement System have the author-
ity to contract with correspondents in various sections
of Texas for the servicing of FHA insured first lien mort-
gage loans.

S U M M A R Y

FHA insured first lien mortgages
are eligible investments for the Per-
manent University Fund of the University
of Texas.

The Board of Regents of the University
of Texas, the State Board of Education, the
State Board of Trustees of the Employees Re-
tirement System and the State Board of Trustees
of the Teacher Retirement System have the author-
ity to contract for the servicing of FHA in-
sured first lien mortgages; however, we recom-
mend that future servicing contracts be submitted
to this office for approval prior to execution.

Respectfully submitted,

WAGGONER CARR
Attorney General of Texas

ROBERT C. FLOWERS
Assistant Attorney General

RCF:vg

APPROVED:
OPINION COMMITTEE

Ralph R. Rash, Chairman
M. Paul Martin
John W. Fainter, Jr.
Mark W. White

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright